**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| DEJON PARIS, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 3:24-cv-00279 |
| § | |
| TRANSUNION LLC, *et al.*, § | |
| § | |
| Defendants. § | |

### REDACTED MEMORANDUM AND RECOMMENDATION[1]

Defendant Bridgecrest Acceptance Corporation has filed a Motion to Enforce Settlement Agreement & For Attorneys' Fees. Dkt. 19. Having reviewed the briefing, the record, and the applicable law, I recommend the motion be granted in part and denied in part.[2]

### BACKGROUND

In the fall of 2024, Plaintiff Dejon Paris sued Bridgecrest and TransUnion LLC for alleged violations of the Fair Credit Reporting Act ("FCRA"). In February 2025, Paris and Bridgecrest began discussing the possibility of amicably resolving their dispute. On February 14, 2025, Bridgecrest's counsel, Sabrina Neff, sent Paris an email containing a formal settlement offer. *See* Dkt. 19-7 at 4–5 (sealed); Dkt. 43-7 at 4–5 (redacted). The February 14, 2025 email contained five numbered paragraphs, each identifying proposed settlement terms. The settlement offer specifically contemplated the "[e]xecution of a settlement and release agreement"

---

[1] On April 29, 2025, I granted the parties' Second Amended Joint Motion to Seal Motion to Enforce Settlement Agreement, Opposition to Motion, and Reply in Support of Motion (Dkt. 40). *See* Dkt. 45. Because I quote to materials that have been redacted, I am issuing sealed and redacted versions of this Memorandum and Recommendation.

[2] "Because a ruling on [Bridgecrest's] motion could be dispositive of the claims asserted in this matter, I am issuing a Memorandum and Recommendation as opposed to an Opinion and Order." *Castillo v. Worley Group, Inc.*, No. 4:23-CV-03134, 2024 WL 3242275, at *1 (S.D. Tex. June 28, 2024).

with certain specific provisions. Dkt. 43-7 at 5. Later that day, Paris responded to Neff's email. His response was clear and unequivocal: "Yes, I accept." *Id.* at 4. Paris's email went on to state that he expected ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. 19-7 at 4 (sealed). That same evening Paris emailed Neff ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See id.*

On February 20, 2025, Neff reached out to Paris by email: "I just wanted to give you a quick update since I've been quiet the past few days. The status is that I'm waiting to get the settlement agreement back from my client to send it to you. I should have it to you soon." Dkt. 43-7 at 3. Paris responded: "No problem, thank you for the update." *Id.*

Four days later, on February 24, 2025, Paris sent the following email to Neff:

Good Morning Sabrina,

I hope you had a great weekend.

Unfortunately, your client has delayed too long and my settlement demand ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Please let me know if your client is on board with the new settlement terms, If not, we can continue with Discovery as planned.

-DeJon

Dkt. 19-7 at 2 (sealed); Dkt. 43-7 at 2 (redacted). Within two hours, Neff responded to Paris by email:

Good morning, Mr. Paris.

Please find attached the settlement agreement from Bridgecrest. It reflects the settlement terms the parties agreed to on February 14 (see emails below).

Bridgecrest rejects your new demand below for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ If your intent is to continue demanding ▓▓▓▓▓▓▓▓▓▓▓ rather than to finalize settlement on the terms to which we agreed, please let us know your position on Bridgecrest's forthcoming Motion to Enforce the Settlement Agreement, which will include a request for attorney's fees.

Thank you.

2

*Id.* Paris subsequently informed Neff that he did not believe the proposed settlement agreement reflected "what was agreed upon." Dkt. 47 at 16. He further stated: "My intention was to have an agreement signed and complete before your Discovery deadline of 2/24/25 in which my demand would change and it has." *Id.* at 17.

On February 26, 2025, Bridgecrest filed the pending motion, seeking to enforce the parties' settlement agreement and dismiss the case against it.

## ANALYSIS

### A. THE PARTIES ENTERED INTO AN ENFORCEABLE SETTLEMENT AGREEMENT

"A district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (cleaned up). When the disputed "settlement involves a right to sue derived from a federal statute," like Paris's claims under the FCRA, "federal law . . . governs the validity of the settlement." *Macktal v. Sec'y of Lab.*, 923 F.2d 1150, 1157 n.32 (5th Cir. 1991). Under federal common law, "[a] settlement agreement is a contract." *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). Thus, a "binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Chen v. Highland Cap. Mgmt., L.P.*, No. 3:10-cv-1039, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (quotation omitted). In order to find that the parties formed a settlement agreement, Bridgecrest must prove "that the parties reached an agreement regarding all material terms." *Lozano v. Metro. Transit Auth. of Harris Cnty.*, No. H-14-1297, 2016 WL 3906295, at *3 (S.D. Tex. July 19, 2016).

This is not a close call. All of the material terms of the settlement are clearly set forth in the email exchange between Bridgecrest's counsel and Paris. As noted above, Bridgecrest's counsel's February 14, 2025 settlement offer identified five settlement terms. Paris's email response—"Yes, I accept"—is unambiguous. Dkt.

3

43-7 at 4. When Paris sent his acceptance email, all of the material terms had been agreed to by the parties. The settlement was complete.

It makes no difference that the parties never executed a formal written settlement agreement. "Federal law does not require a written, signed agreement." *Lee v. Gulf Coast Blood Ctr.*, No. H-19-4315, 2020 WL 4700896, at *5 (S.D. Tex. Aug. 13, 2020). "If the parties' communications indicate that an agreement had been reached and there are no material terms outstanding to negotiate, a district court can enforce a settlement agreement made by email." *Peacock v. Deutsche Bank Nat'l Tr. Co.*, No. 4:20-cv-3945, 2022 WL 1185173, at *3 (S.D. Tex. Apr. 19, 2022). "[C]ourts routinely enforce settlement agreements even where the precise wording of a release has not been finalized," and "[t]his remains true even when one of the parties ultimately fails to sign the finalized release." *In re DEEPWATER HORIZON*, 786 F.3d 344, 357 (5th Cir. 2015) (quotation omitted); *see also Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) (A party who "changes his mind when presented with the settlement documents . . . remains bound by the terms of the agreement" if the parties agreed to all material terms.).

Paris advances three arguments for why the parties never reached a valid and enforceable settlement. Each argument is easily dismissed.

First, Paris claims that he "explicitly reserved the right to modify settlement terms if an agreement was not reached before the discovery deadline of February 24, 2025."[3] Dkt. 22 at 5 (sealed); Dkt. 47 at 5 (redacted). Putting aside the fact that the February 14, 2025 email exchange between Paris and Bridgecrest's counsel does not contain any such time restriction, there *was* a binding and enforceable agreement reached on February 14, 2025—well before the discovery deadline of February 24, 2025.

---

[3] The words "an agreement was not reached before the discovery deadline of February 24, 2025" have been unnecessarily redacted from the publicly available version of Paris's response.

Second, Paris insists that he "explicitly conditioned acceptance of [Bridgecrest's] offer on" receiving ▮▮▮▮▮ Dkt. 22 at 3 (sealed); Dkt. 47 at 3 (redacted). That is not an accurate statement. In response to Bridgecrest's settlement proposal, Paris responded: "I accept." Dkt. 47 at 14. When Paris wrote "I accept," he created a binding and enforceable settlement agreement. Although Paris did state later in that same email that he expected ▮▮▮▮▮ *the italicized language is critical.* Dkt. 22-1 at 3 (emphasis added) (sealed). Paris never conditioned his acceptance of Bridgecrest's settlement proposal on ▮▮▮▮▮ within seven days of the February 14, 2025 email exchange. Instead, Paris's email acceptance indicated that he expected to ▮▮▮▮▮ within seven days of the execution of the formal written settlement agreement and release. Bridgecrest recognized this, including language in the proposed formal written settlement agreement specifying that ▮▮▮▮▮ after receiving Paris's signature on the document and ▮▮▮▮▮ Because Paris never signed the proposed written settlement agreement, he never ▮▮▮▮▮

Third, Paris argues that the proposed written settlement agreement provided by Bridgecrest's counsel on February 24, 2025 did not conform to the agreement the parties reached by email on February 14, 2025. Paris maintains that Bridgecrest "unilaterally inserted new terms not discussed or agreed upon" in the draft settlement agreement, "further evidencing a lack of mutual agreement on material terms." Dkt. 47 at 2–3. I need not determine whether the proposed written settlement agreement accurately reflects the terms set forth in the February 14, 2025 email exchange. "[T]erms that arise when formalizing the release agreement that played no part in the parties' actual negotiations cannot be considered material." *Lozano*, 2016 WL 3906295, at *9; *see also Demissie v. Starbucks Corp. Office & Headquarters*, 118 F. Supp. 3d 29, 35 (D.D.C. 2015)

5

("[T]erms that were not discussed by the parties during negotiations, but are only brought up after-the-fact, may be deemed immaterial."), *aff'd*, 688 F. App'x 13 (D.C. Cir. 2017). The material and essential terms of the parties' settlement are identified in the February 14, 2025 email exchange. Once entered, a settlement agreement "cannot be repudiated by either party and will be summarily enforced." *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967).

In sum, the application of federal law establishes that there is a valid and enforceable settlement between Paris and Bridgecrest.

**B.    BRIDGECREST'S REQUEST FOR ATTORNEYS' FEES**

Bridgecrest requests an award of attorneys' fees under Texas Civil Practice and Remedies Code § 38.001(8) for having to move to enforce the settlement agreement. "[A]ttorney's fees are recoverable under section 38.001 when a party obtains an award of specific performance, for example, to enforce a settlement agreement that ends ongoing litigation." *Med Vision, Inc. v. Medigain, LLC*, No. 3:15-cv-77, 2017 WL 1190494, at *20 (N.D. Tex. Mar. 31, 2017). Yet, Bridgecrest offers no basis for why Texas substantive law would apply in this case, which was removed on the basis of federal question jurisdiction because "it is a civil action founded on a claim or right arising under the laws of the United States." Dkt. 1 at 1. As discussed above, federal common law governs Bridgecrest's motion.

Under the federal common law, "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (cleaned up). "A party's refusal to abide by a settlement agreement without justification amounts to a bad-faith action that can support the award of attorneys' fees by a federal court." *Farner v. CHCA Bayshore, L.P.*, No. 3:22-cv-00369, 2023 WL 5528611, at *4 (S.D. Tex. Aug. 28, 2023) (denying request for attorneys' fees). Although Paris's arguments against enforcement of the settlement agreement are legally unfounded, I must consider that Paris is not a licensed attorney. He is representing himself in this

6

matter. Because I can understand how Paris, a layman, might not have a complete grasp of basic contract law principles, I cannot say that he has acted in bad faith. This alone is a sufficient reason to deny Bridgecrest's requests for attorneys' fees.

Bridgecrest's request should also be denied because Bridgecrest, the party requesting attorneys' fees, fails to carry its burden of establishing the reasonableness of the fees sought. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). This is true under both federal and state law. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–02 (Tex. 2019) ("General, conclusory testimony devoid of any real substance will not support a fee award. Thus, a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought."). Here, the record is devoid of any competent evidence—time records, affidavits, declarations and the like—establishing entitlement to an award of attorneys' fees. All Bridgecrest offers is argument and that will not suffice. This is an additional reason for recommending that Bridgecrest's request for attorneys' fees be denied.

## CONCLUSION

For the reasons discussed above, I recommend that Bridgecrest's Motion to Enforce Settlement Agreement & For Attorneys' Fees (Dkt. 19) be granted in part and denied in part.

I find that Paris and Bridgecrest reached a binding and enforceable settlement agreement. To be clear, in recommending that the court find the settlement agreement enforceable, I am not referring to the three-page settlement agreement that Bridgecrest's counsel emailed to Paris on February 24, 2025. The terms of the parties' settlement agreement are set forth in the five numbered paragraphs listed in Neff's February 14, 2025 email to Paris. *See* Dkt. 22-1 at 3

(sealed); Dkt. 47 at 14 (redacted). I recommend that ███████████████████████████████████████████████ of the adoption of this Memorandum and Recommendation.

    I further recommend that Bridgecrest's request for an award of attorney's fees be denied.

    The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

    SIGNED this 30th day of April 2025.

                                           ANDREW M. EDISON
                                  UNITED STATES MAGISTRATE JUDGE